ANTHONY F. REBETTO, Appellant, v. JOHN HOW, Respondent.

1. *Boats and vessels — Seamen — Wages — Forfeiture — Entirety of contract — Variance.* — If a seaman enters into an engagement for a specified voyage, and the boat or vessel is disabled before reaching the port of delivery, and another vessel is chartered or substituted in its stead, it is his duty to proceed on such substituted vessel. But where there is no substitution, but the freight is simply transhipped to another vessel bound for the same destination, it is unjust and unreasonable to say that the crew can be forced to go and serve on the boat which takes the freight from the one disabled, or else forfeit their whole pay.

Rebetto v. How.

*Appeal from St. Louis Circuit Court.*

The facts as agreed between the parties are set out in the opinion of the court.

*Bakewell & Farish*, for appellant.

Appellant was hired by respondent for a definite voyage, on monthly wages. At the time the vessel in which he had shipped became unseaworthy, the appellant had served one month. It is for this month's wages that this action is brought.

This was not a case where a new vessel was substituted for the one upon which the appellant had shipped, but the freight was simply transferred to another vessel proceeding in the same direction, officered and manned by a distinct master and crew. A case of substitution is where a new vessel is procured, and the crew, officers, and freight are transferred. There is no law making it a desertion or abandonment on the part of the seaman to refuse to proceed and complete the voyage on the substituted vessel. Nor is there any force in the reasoning that because it is the duty of the master under certain circumstances, in case of accident to his vessel, to reship on some new bottom, therefore the seaman is bound to follow the freight in the new vessel. This, if true at all, can only apply when, from the necessity of the case, the services of the seaman are requisite to forward the freight, and no other means can be procured. In the case at bar no such state of facts is shown. The boat on which the goods were transhipped was proceeding in the same direction, and must, the contrary not appearing, be presumed to be officered and manned. But if this were otherwise, and this was a case of substitution of one vessel for another, there is no reason why the appellant may not recover for his month's wages that had accrued. (Hindman v. Shaw, 2 Pet. Adm. Dec. 264.) The maxim that "freight is the mother of wages" has no application to this case; for here freight was earned — the vessel had completed a very large portion of the voyage. (Curtis on Merch. Seamen, 271.)

*Rankin & Hayden*, for respondent.

Where a mariner ships for a specified voyage, and the ship is disabled on that voyage and before reaching her point of destination, the mariner is bound to prosecute the voyage in a suitable vessel, to which the cargo has necessarily been transferred in order to convey it to the port to which the master had contracted to take it. In Hindman v. Shaw, 2 Pet. Adm. 264, the vessel had arrived at a port of destination, and had earned some freight, and the mariner had thus become entitled to some wages. In the present case the vessel was disabled long before she reached Fort Benton, her port of destination. She had accordingly earned no freight; and thus the question is presented in its simple form. The principle of the case in Peters thoroughly covers the present case. The mariner was considered to have deserted his vessel, and was denied any wages for what corresponds to the whole voyage in the case at bar.

Pothier and Valin have decided this question against the mariner. (Curtis on Merch. Seamen, p. 18, n. 1.) All the analogies of law are in favor of the view taken by the court below. The American doctrine is not only that the master *may*, but that he *must*, forward the cargo, if possible, in another bottom, where his own ship can not proceed. (1 Pars. on Mar. Law, 161, note, and authorities there cited; Dorris v. Copelin, 14 Am. Law. Reg. 493.) *Lex uno ore omnes alloquitur.* It would be grossly inconsistent in the law to say in one breath to the master, "You must reship your cargo in another vessel, if you can possibly procure one," and in the next breath to the mariner, "You are under no obligation to serve in any other vessel than the one you shipped on."

"Freight is the mother of wages." As no freight is earned unless the cargo is carried to its destination, the mariner certainly would be entitled to no wages when he refused to perform the service by which alone wages could be earned. Unless the voyage is an entire voyage, no freight is earned, and consequently no wages, even though unavoidable accident prevent the completion of the voyage. (The Lady Durham, 3 Hagg. Adm. 196; Her-

naman v. Bawden, 3 Burr. 1844; Giles v. The Brig Cynthia, 1 Pet. Adm. 803 ; The Saratoga, 2 Gall. 164.)

The identity of the vessel in which the mariner serves is not the essence of his contract. It is the identity of the voyage, as a voyage, that is essential ; for the object and purpose is the transportation of the cargo to its destination. This can be completed only through the mariner. To allow him to cling to his vessel and frustrate the object of the whole voyage would be an absurdity.

WAGNER, Judge, delivered the opinion of the court.

This suit was originally instituted before a justice of the peace, where the plaintiff had a judgment. On appeal to the Circuit Court the judgment was reversed and the court found for the defendant. The case was tried on the following agreed statement of facts :

That the defendant was, in May, 1867, and before and since, the owner of the steamboat David Watts ; that in the latter part of March, 1867, the plaintiff applied on board said boat, then lying at the port of St. Louis, and was engaged and hired by said defendant, as a hand on said boat, to make the trip from St. Louis to Fort Benton and back, and was to receive and be paid by defendant $40 per month, and thereupon plaintiff shipped on board of said boat; that said boat left St. Louis on or about the 30th day of March, 1867, and proceeded on her way until she arrived at Plattsmouth, where the boat, from one of the accidents of navigation, was unable further to pursue her voyage ; that thereupon said boat turned back and proceeded down the Missouri river to a point fifteen miles below St. Joseph, where she met the steamboat Tacony; that thereupon, it being impossible to make the David Watts seaworthy for her voyage, her cargo was transferred to the steamboat Tacony, and the plaintiff and other hands requested to resume the voyage on the Tacony. This the plaintiff refused to do, claiming that he was not bound to serve on another boat. This was the first day of May, 1867. It is admitted that the plaintiff performed his work well, and that he has not been paid anything; that the Tacony was as good a boat as the Watts,

and suitable for the voyage. The suit was brought for one month's wages. It is contended, on the part of the defendant, that the plaintiff, in refusing to ship on board of the Tacony, was guilty of desertion, and thereby forfeited all claim to wages, and that, as the voyage was not completed when he left the boat, nothing had been earned, according to the doctrine that "freight is the mother of wages." In investigating this subject I have been surprised at the great dearth of authority. So far as my researches have extended, there is no reported case arising out of the navigation of our inland waters. In maritime practice the general rule applies that it is necessary to earn freight in order to obtain wages; but there are qualifications and exceptions to the rule, and it is questionable how far the doctrine would be enforced as to our steamboat navigation, where hands are employed for specific periods, without regard to any particular trip or voyage. Seamen are the favorites or wards of the courts, and it is an established principle that contracts respecting their wages will be construed liberally in their favor, in all cases where there may be room for such construction. (1 Pars. Cont., 5th ed., 391.)

The general doctrine that, where the voyage is interrupted before the goods reach their final point of destination, it is the duty of the master to provide other means of conveyance, and forward and transport them to the destined port, sheds very little light on the question at bar. If a new vessel were chartered, and the freight, master, and crew transferred to it, there would seem to be substantial reasons why the hands should be compelled to make the trip on the substituted vessel. But where there is not a substitution of vessels, but a transferrence of freight only, the obligation cannot prevail to the same extent.

In Hindman v. Shaw ( 2 Pet. Adm. Dec. 264), a ship, after reaching one port of delivery, was unable to further proceed from a port at which she touched in the progress of her voyage. The seamen refused to proceed in a vessel provided for the further transportation of the cargo, and claimed wages and an additional allowance, it being the custom in the admiralty courts, when the voyage was interrupted by accident or unseaworthiness of the

Rebetto v. How.

vessel, to make an allowance to the seaman to pay his expenses home and loss of time. His right to wages up to the first port was conceded, and his claim for additional wages and allowance was the only matter in dispute. The court refused the additional allowance on the ground that the seaman was offered a renewal of his contract, and that there was no equity in his demand. Did the plaintiff here claim for the whole voyage to Fort Benton, or for any time further than for actual services rendered, it is clear that he could not succeed. But he only asks for pay while he performed services. His contract was to go on the David Watts, and with the master, officers, and crew provided for that boat. He might have been very willing to ship on the Watts, knowing the men with whom he would be associated, but wholly unwilling to go on another boat differently situated. When the freight was transhipped on the Tacony, and new officers were to be placed over him, and he was to be surrounded by a strange and different crew, the circumstances were materially changed, and he had a right to say "I did not enter into this contract." If a seaman enters into an engagement for a specified voyage, and the boat or vessel is disabled before reaching the port of delivery, and another boat or vessel is chartered or substituted in its stead, it is his duty to proceed on such substituted vessel. But in this case there was no substitution; the freight was simply transhipped or transferred to another boat bound for the same destination. Where one of our river boats starts on a trip and becomes disabled, and another boat comes along and receives her freight for a destined port, it is unjust and unreasonable to say that the crew of the former can be forced to go and serve on the latter, else they will forfeit their whole pay.

I think the judgment of the Circuit Court was erroneous, and it should be reversed, and judgment will be entered in this court for plaintiff. The other judges concur.